**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| COLONY RIDGE DEVELOPMENT, LLC, | § | |
| GRAND SAN JACINTO PROPERTY | § | |
| OWNERS ASSOCIATION, INC., LIBERTY | § | |
| MONTEBELLO PROPERTY OWNERS | § | Civil Action No. _____ |
| ASSOCIATION, INC., and CAMINO | § | |
| REAL SUBDIVISION PROPERTY | § | |
| OWNERS ASSOCIATION, INC. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | |
| | § | |
| CITY OF PLUM GROVE and MAYOR | § | |
| LEE ANN PENTON-WALKER | § | |
| | § | |
| Defendants. | § | |

## ORIGINAL COMPLAINT

Plaintiffs Colony Ridge Development, LLC, Grand San Jacinto Property Owners Association, Inc., Liberty Montebello Property Owners Association, Inc., and Camino Real Subdivision Property Owners Association, Inc. (collectively "Plaintiffs") bring this Original Complaint pursuant to 42 U.S.C. §1983 and 42 U.S.C. §3601 *et seq.* complaining of the actions of Defendants the City of Plum Grove and Mayor Lee Ann Penton-Walker (collectively "Defendants"), and in support thereof would respectfully show the Court as follows:

### I.      Parties

1.      Plaintiff Colony Ridge Development, LLC ("Colony Ridge") is a domestic limited liability company, organized under the laws of the State of Texas, doing business in Liberty County, Texas.

2.      Plaintiff Grand San Jacinto Property Owners Association, Inc. ("Grand San Jacinto") is an incorporated property owner's association in Texas.

3.      Plaintiff Liberty Montebello Property Owners Association, Inc. ("Liberty Montebello") is an incorporated property owner's association in Texas.

4.      Plaintiff Camino Real Subdivision Property Owners Association, Inc. ("Camino Real Subdivision") is an incorporated property owner's association in Texas.

5.      Defendant, the City of Plum Grove, Texas, ("City" or "Plum Grove") is a general law city located in Liberty County, Texas.  The City is a municipal corporation organized and operating by virtue of and under the laws of the State of Texas.  The City may be served with process by serving the Mayor, Lee Ann Penton-Walker, at Plum Grove City Hall, 9485 Plum Grove Road, Cleveland, Teas 77327 or at her home address 1257 CR 347, Cleveland, Texas or where she may be found.

6.      Defendant Mayor Lee Ann Penton-Walker is the Mayor of Plum Grove, Texas who may be served with process at Plum Grove City Hall, 9485 Plum Grove Road, Cleveland, Texas 77327 or where she may be found.

## II.      Jurisdiction and Venue

7.      The Court has jurisdiction over the lawsuit because the suit arises under 42 U.S.C. sec. 1983 and Title VII of the Civil Rights Act of 1968 (the "Fair Housing Act"), 42 U.S.C. §§ 3601 *et seq.,* as amended 1988.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1)-(3) because Defendant Plum Grove is located in this district; Defendant Mayor Lee Ann Penton-Walker ("Mayor") resides in this district; a substantial part of the events or omissions giving rise to this claim occurred in this district; a substantial part of the property at issue is situated in this district, and no other district is proper.

### III.   Facts

#### A.  The City of Plum Grove

9.      Plum Grove is a small city located in a rural area, approximately 40 miles northeast of downtown Houston in Liberty County, Texas.   The City was incorporated on February 10, 1969, when the Liberty County Judge filed the Order of Incorporation for Plum Grove for record with the Commissioner's Court.  (Attached as **Exhibit A** is a copy of the Order of Incorporation.)  At the time of incorporation, the City reported that it had 200 residents.  Upon information and belief, the City was incorporated so that the residents could avoid being annexed by adjacent cities and so that the residents could avoid being subjected to higher property taxes and/or city taxes.

10.      In 1972, Plum Grove redefined its incorporation boundaries to reduce them to 2 square miles to be in accordance with Texas Local Government Code.  TEX. LOC. GOV'T CODE §§5.901 and 7.001 (recognizing that a general law city with fewer than 2,000 inhabitants must not have more than two square miles of surface area and providing for the authority to incorporate as a Type B General-Law Municipality) (Attached as **Exhibit B** is a copy of Ordinance No. 2, reducing Plum Grove's boundaries to two square miles.)

11.      In addition to Plum Grove exercising jurisdiction within its two square miles of territory, the State of Texas designates an extraterritorial jurisdiction ("ETJ") for municipalities. *See* TEX. LOC. GOV'T CODE ANN. §42.001.   An ETJ is land where city regulations may be applied to meet the minimum standards for future annexation, such as road access and lot sizes. For municipalities with fewer than 5,000 inhabitants, the ETJ extends one-half mile outside of the municipal boundaries.  TEX. LOC. GOV'T CODE ANN. §42.021.  City taxes are not collected in

an ETJ and public services are generally provided by the county or state, such as public safety, road maintenance, and parks.

12.     As a Type B City, Plum Grove's governing body is its city council, which is made up of its alderman and mayor.  *See* TEX. LOC. GOV'T CODE § 23.021; *see also* TEX. LOC. GOV'T CODE § 23.026 cmt. n.4.  Further, Texas law establishes that municipalities such as Plum Grove, at a minimum, should exercise the following jurisdiction within their corporate boundaries:

- Maintain local government records.  TEX. LOC. GOV'T CODE §203.021
- Designate a records management officer.  TEX. LOC. GOV'T CODE §203.025
- Conduct an annual audit.  TEX. LOC. GOV'T CODE §§103.001-3
- Maintain an annual budget.  TEX. LOC. GOV'T CODE §102.001-2
- Designate a depository and designated officer for handling municipal funds.  TEX. LOC. GOV'T CODE §§105.016, 105.092.
- Designate annually an official newspaper.  TEX. LOC. GOV'T CODE §52.004.
- Maintain the public streets inside its boundary.  *Jezek v. City of Midland*, 605 S.W.2d 544, 546 (Tex. 1980).
- A Type B City may assess a tax rate may not exceed $.25 per $100 valuation. TEX. TAX CODE §302.001
- Adopt an official map indicating city boundaries and ETJ boundaries.  TEX. LOC. GOV'T CODE §41.001

13.     In its 45 year history, from 1969 to 2014, Plum Grove practiced minimal government.  Based on information and belief, residents in Plum Grove were content to have limited interference with the use and enjoyment of their land.  Based on public records, Plum Grove chose not to levy city taxes, not to provide city services (e.g., police, road maintenance, zoning, building codes), and not to regulate residential and commercial development.

14.     As of September 1, 2001, the Texas Legislature required cities and counties to enter into agreements as to the platting and permitting regulations that will apply to land developers in an ETJ territory due to city and county maintaining overlapping jurisdiction in the ETJ.  *See* TEX. LOC. GOV'T CODE §242.001.  Thus, developers should only have to comply with

one jurisdiction's subdivision rules in an ETJ, rather than trying to comply with differing city and county rules.

15.     Based on public records, Plum Grove failed to enter into written agreements with its adjoining counties, including Liberty County and Montgomery County, identifying the government entity authorized to regulate subdivision plats and approve related permits in its ETJ. *See* TEX. LOC. GOV'T CODE §242.001(c).  Such failure has meant that land developers must submit plat applications to the City of Plum Grove and the county to seek approval for platting and development located within the City's boundaries and the City's ETJ.

16.     Texas Local Government Code section 242.001(b) provides that for an area in a municipality's ETJ, a plat may not be filed with the *county clerk* without the approval of the governmental entity *authorized* under to regulate subdivision in the area.  TEX. LOC. GOV'T CODE §242.001(b) (emphasis added).  Because Plum Grove has failed to designate the governmental entity authorized to regulate subdivisions within its EJT, Liberty County and Montgomery County have required Colony Ridge to obtain approvals on its plat applications by both the City and the county, prior to recording.

17.     Up until recently, Plum Grove had no land development regulations, no subdivision regulations, no city engineer, and no permitting requirements, thus, plat submittals to the City were simply an administrative review and an additional time delay to development. Based on information and belief, Plum Grove generally relied on Liberty County and Montgomery County to review plat submittals and land development submittals for compliance with any regulations.

18.     Since Plum Grove has had limited financial resources, the City has generally relied on Liberty County to provide services, such as road maintenance, public safety, and general oversight of residential and commercial planning and development, within its City limits.

19.     Due to the affordability of land in Plum Grove and the City's close proximity to Houston, the nation's fourth most populous city, residential development inside the City's boundaries has been on the rise in the last four years.  In 2015, following this residential growth, Plum Grove's historical stance of limited to no government changed.

**B.  Plum Grove's Reaction to Colony Ridge's Development & Hispanic Population**

20.     Colony Ridge develops residential subdivisions in Montgomery and Liberty Counties, including neighborhoods located in and around the City of Plum Grove, Texas.  Over the past five years, Colony Ridge has chosen to market its residential developments to Spanish-speaking families who work in Houston but cannot afford to live there due to high housing prices.  Colony Ridge provides financing on 1/3 acre to ½ acre lots in its neighborhoods, which offer regulated utilities, including electrical, water, sewer, and telephone.  Many families buying lots in Colony Ridge's subdivisions are of Hispanic or Latino origin.  These families choose to build their own homes on their lots or buy manufactured homes for their lots.  Colony Ridge's Subdivisions in Plum Grove are known as Montebello, Grand San Jacinto, and Camino Real Subdivisions (collectively "Subdivisions").

21.     The influx of Hispanic residents moving to Plum Grove has been met with resistance by some of the City's long-term residents.  In early 2015, a number of residents, including Lee Ann Penton-Walker ("Walker"), began speaking out against Colony Ridge's developments and started demanding that City and County officials do something to get rid of

the new Hispanic/Latino population and/or fix the "situation."  (Attached as **Exhibit C** is a copy of a news article published April 10, 2015.)

22.     In the last year, Plum Grove's city council and mayoral offices have seen complete turnover due to resignations precipitated by the election of Walker and other opponents to Colony Ridge and its Subdivisions.  (Attached as **Exhibit D** is a copy of a news article published May 17, 2015.)  According to a May 17, 2015 news article, Walker (not yet the mayor) had been critical of City leaders for failing to stop Colony Ridge's developments and Walker claimed the neighborhood lots were being "marketed and sold to illegal immigrants . . ." (*Id.*)  Walker also publicly claimed that Colony Ridge was violating land development laws.

23.     Plum Grove's mayor that resigned, T.W. Garrett, was quoted as stating that Colony Ridge followed all the rules for construction and that Colony Ridge permitted their sewer and water and "have some of the better infrastructure in Liberty County."  (*Id.*)  Despite being advised numerous times by Liberty County officials and others that Colony Ridge's Subdivisions comply with all applicable laws, Walker continuous to attack the legality of Colony Ridge's Subdivisions.

24.     In addition to accusing Colony Ridge of violating laws, Walker has accused the Hispanic and Latino residents of violating laws, including building codes and state and county regulations.  Walker has repeatedly accused the Subdivisions' residents of being illegal aliens. Walker has harassed the residents, photographed the residents and their property against their will, and attacked the residents use and enjoyment of their property.

25.     Further, Walker has asked Liberty County officials to take action to increase the minimum lot size in Liberty County from 1/3 an acre to 1 acre so that lot prices will increase and Hispanics and Latinos will not be able to afford lots in and around Plum Grove.

26. Following Plum Grove's May 2015 resignations and elections, the City started adopting regulations designed to discriminate against Colony Ridge and the Subdivisions' residents, included the following:

- Restrict the age of mobile homes that may be moved into the city limits.

- Limit residential construction to one residence per lot and one family per home.

- Forbid the use of camper trailers and recreational vehicles as permanent residences.

- Forbid temporary structures on lots for a time period of greater than 6 months.

- Require residents to contain and control all livestock and animals.

- Retain a City Attorney.

- Retain a City Engineer.

- Set a City Budget and a City tax rate.

- Enter into Interlocal Agreement with Liberty County.

- Obtain a City Insurance Policy for councilmember errors and omissions.

- Set up a City process for reviewing platting, permitting, and imposing fees.

- Adopt development code and inspection process.

- Demand payment for utility hook-ups from Quadvest.

- Adopt subdivision ordinance, Ordinance 1010 adopted on September 9, 2015.

- Retain a City Inspector.

- Adopt building codes, Ordinance 1012 adopted on October 4, 2015.

- Negotiate development agreement with Colony Ridge.

- Adopt sign ordinance, Ordinance 1014 adopted on October 27, 2015.

- Change City from a Type B City to a Type A City; Ordinance 1013 adopted on October 27, 2015 and enacted on November 23, 2015.

- Adopt updated map of City's boundaries and City's ETJ boundaries.

- Adopt ordinance to regulate businesses, proposed Ordinance 1015.

- Adopt noise ordinance.  City Attorney directed to draft Ordinance on November 24, 2015.

- Adopt ordinance to regulate taco stands and restaurants.  City Attorney directed to draft Ordinance on November 24, 2015.

27.     In November 2015, Walker was appointed Mayor of Plum Grove after the current Mayor, Walker's brother, unexpectedly passed away.  Following the appointment of Walker as Mayor, another councilmember resigned.

28.     On March 2, 2016 and March 5, 2016, Plum Grove published a Notice of Public Hearing "to consider placing a moratorium on residential and commercial property development."  (Attached as **Exhibit E** is a copy of the notice of moratorium.)  The proposed moratorium attached Colony Ridge's vested rights in developing the land at issue and was designed to halt and inhibit commercial and residential development in the Subdivisions.

## C.  Plum Grove's Improper Denial of Colony Ridge's 2015 Plat Submittals

29.     In general, residential developers who subdivide or plat land are required to comply with regulations codified in the Texas Local Government Code, any applicable county regulations, and any applicable municipal codes that are in place at the time of filing for an initial plat application.[1]

30.     Pursuant to Texas Local Government Code section 245.002(a), each regulatory authority **must** approve or disapprove a permit or plat based solely on the regulations, ordinances, or rules in place **at the time that the original application is filed**.  TEX. LOC. GOV'T CODE §245.002(a) (emphasis added).  Specifically, section 245.002 provides:

---

[1] TEX. LOCAL GOV'T CODE TITLE 7, Regulation of Land use, Structures, Business, and Related Activities; Subtitle A provides for Municipal Regulatory Authority, including the Municipal Regulation of Subdivisions and Property Development and Subtitle B provides for the County Regulatory Authority, including the County Regulation of Subdivisions.  TEX. LOCAL GOV'T CODE Chapters 212 & 232.

> Each regulatory agency shall consider the approval, disapproval or conditional approval of an application for a permit *solely on the basis of any orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time* (1) the original application for the permit is filed for review for any purpose, including review for administrative completeness; or (2) *a plan for development of real property or plat application is filed* with a regulatory agency.

TEX. LOC. GOV'T CODE §245.002(a)(1) and (2) (emphasis added); *Vill. of Tiki Island v. Premier Tierra Holdings, Inc.*, 464 S.W.3d 435, 440 (Tex. App.—Houston [14th Dist.] 2015), *reh'g overruled* (May 5, 2015).

31.     Section 245.002 is known as the "vested rights" rule or "freeze law" as it freezes the rules and regulations applicable to the review of a permit or plat application upon the landowner's first application for a "project." *Quick v. City of Austin*, 7 S.W.3d 109, 111 (Tex.1998); *Hartsell v. Town of Talty*, 130 S.W.3d 325, 328 (Tex. App.—Dallas 2004, pet. denied).

32.     As addressed above, Plum Grove first adopted subdivision codes on September 9, 2015.   On September 3, 2015, approximately one week before the City adopted its first subdivision ordinance, Colony Ridge mailed, by certified mail return receipt requested, its plat applications for Grand San Jacinto Sections 7 and 8 (collectively referred to as "Colony Ridge's Plats" or "Plats") to Plum Grove.  The same documents were hand-delivered to the City the next day, September 4, 2015.

33.     Pursuant to section 212.005, "The municipal authority responsible for approving plats *must approve* a plat or re-plat that is required to be prepared under the is subchapter and that satisfies all applicable regulations."   TEX. LOC. GOV'T CODE §212.005 (emphasis added). Section 212.009 provides that a municipality must "act on a plat within 30 days after the date the plat is filed."   TEX. LOC. GOV'T CODE §212.009(a).   "A plat is considered approved by the

municipal authority unless it is disapproved within that period." TEX. LOC. GOV'T CODE §212.009(b).    Accordingly, Plum Grove was required to act on Colony Ridge's Plats by October 4, 2015 or the Plats would be deemed approved pursuant to statute.

34.    According to public records, Plum Grove held a special session on Sunday, October 4, 2015 to consider Colony Ridge's Plats.  (Attached as **Exhibit F** is a copy of the minutes from the City's Oct. 4, 2015 special session.)  The City Attorney, Leonard Schneider, stated the City's Engineer had reviewed the plats and determined that the Plats failed to meet certain Liberty County ordinances and recommended the Plats be denied, corrected, and resubmitted.  (*Id.*)  The city council followed this recommendation and voted to deny the Plats on October 4, 2015.

35.    The denial of the Plats by Plum Grove's city council based solely upon the application of ordinances adopted by other jurisdictions constitutes an arbitrary and capricious denial.  Counsel for Colony Ridge asked Plum Grove to reconsider its denial of the Plats on numerous occasions, but Plum Grove failed to respond to such requests and refused to reconsider its denial of the Plats.  (Attached as **Exhibit G** is a copy of correspondence from counsel for Colony Ridge to Plum Grove's City Attorney dated December 1, 2015 and January 28, 2016.)

36.    Section 212.010 provides: "The municipal authority responsible for approving plats *shall approve* a plat if:

> (1) it conforms to the general plan of the municipality and its current and future streets, alleys, parks, playgrounds, and public utility facilities;
>
> (2) it conforms to the general plan for the extension of the municipality and its roads, streets, and public highways within the municipality and in its extraterritorial jurisdiction, taking into account access to and extension of sewer and water mains and the instrumentalities of public utilities;

(3) a bond required under Section 212.0106, if applicable, is filed with the municipality; and

**(4) it conforms to any rules adopted under Section 212.002.**

(b) However, the municipal authority responsible for approving plats may not approve a plat unless the plat and other documents have been prepared as required by Section 212.0105, if applicable."

TEX. LOC. GOV'T CODE §212.010 (emphasis added).

37.     Pursuant to section 212.002, a municipality must publicly adopt any rules governing plats, in accordance with the following: "After a public hearing on the matter, the governing body of a municipality may adopt rules governing plats and subdivisions of land within the municipality's jurisdiction to promote the health, safety, morals, or general welfare of the municipality and the safe, orderly, and healthful development of the municipality."  TEX. LOC. GOV'T CODE §212.002.

38.     As addressed above (*see* para. 26), and as acknowledged in correspondence from the City's Engineer, the City's subdivision ordinances were not adopted until September 9, 2015, after the Plats were submitted to the City.  (Attached as **Exhibit H** is a letter from the City Engineer to the City, dated Oct. 2, 2015.)  The City Engineer states, "Since the City's recently approved subdivision ordinances were enacted after [the Plats] were submitted to the City, we have used the Liberty County and Montgomery County rules and regulations as a standard." (*Id.*)

39.     Typically, cities enact more land use restrictions than counties because a county's authority to regulate land is more limited than that of a city.  However, here, Plum Grove existed as a municipality with no land use restrictions for approximately forty-five years.  When searching for a basis to deny Colony Ridge's Plats, the City arbitrarily applied county regulations that had not been adopted by the City.

40.     As provided in Texas Local Government Code sections 212.002 and 212.010, a municipality may adopt rules governing plats and subdivisions of land within the municipality's jurisdiction, and rely upon such adopted rules as a basis for reviewing plats.  TEX. LOC. GOV'T CODE §212.002, 212.010(4).  The City's adoption of rules and ordinances should provide for procedural due process protections and place the land developer on notice of such rules and procedures.

41.     The territorial jurisdiction for counties and municipalities is determined by the corporate boundaries of these legislatively created entities.  "As a general rule a municipal corporation's powers cease at municipal boundaries and cannot, without plain manifestation of legislative intention, be exercised beyond its limits."  *Ex parte Ernest*, 138 Tex. Crim. 441, 444, 136 S.W.2d 595, 597 (1939).

42.     Plum Grove's city council's decision to deny Colony Ridge's Plats based upon county subdivision regulations is contrary to law because a municipality may only apply and enforce its own duly adopted and enacted subdivision laws, not the laws of other jurisdictions. TEX. LOC. GOV'T CODE §212.010 (addressing the municipal regulation of subdivisions and standards for approval).  Additionally, county authority to regulate "land use, structures, and businesses" only applies to areas outside the corporate limits of municipalities.  TEX. LOC. GOV'T CODE §233.031.

43.     Moreover, Plum Grove wholly failed to consider Liberty County's and Montgomery County's administrative and procedural regulations applicable to plat review when they arbitrarily denied Colony Ridge's Plats based on Liberty County's and Montgomery County's subdivision regulations.  *See* TEX. LOC. GOV'T CODE §232.0025(a) and (b) (addressing county regulation of subdivisions and the timely approval of plats, providing in part, that a

county must review a plat application to determine if the application contains all required documentation and notify the applicant of any missing documentation within 10 business days. TEX. LOC. GOV'T CODE §233.031(a) and (b).  Counties and municipalities must comply with any procedural regulations enacted through the Texas Local Government Code, and many counties and municipalities adopt additional procedural regulations, such as resubmission or appeal procedures for plat denials.  *See Riner v. City of Hunters Creek*, 403 S.W.3d 919, 924 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (denying the appeal of a denied plat application due to the applicant's failure to exhaust all of their administrative remedies).

44.     Here, the city council's arbitrary denial of the Plats was a violation of Colony Ridge's procedural due process rights.  The City knew that it had no legal right to apply its recently adopted subdivision ordinance to the Plats and the City knew that it had no legal right to apply another jurisdiction's regulations as a basis for denying the Plats.  Despite this knowledge, the City arbitrarily denied the Plats and failed to respond to requests by Colony Ridge to reconsider its denial.  Further, the City denied Plum Grove's Plats without providing for any procedural due process, such as the right to notice, the right to be heard, and the right to redress.

45.     Based on the statues applicable to the review of Colony Ridge's Plats, the City was obligated to approve Colony Ridge's Plats on or before October 4, 2015 because the City had not adopted any land use restrictions.  The City knew that it had no rules applicable to plat review, thus, the review process was merely a ministerial duty.  By default, the Plats would be deemed approved if the City took no action by October 4, 2015.  TEX. LOC. GOV'T CODE §212.009(b).  Despite this ministerial obligation, the City refused to approve Colony Ridge's Plats and instead denied them, asserting that Colony Ridge's Plats failed to comply with another jurisdiction's rules.

46.     Due to the City's ongoing refusal to sign Colony Ridge's Plats, Colony Ridge filed an Original Petition and Request for Writ of Mandamus on February 10, 2016.  (Attached as **Exhibit I** is a copy of the Original Petition and Request for Writ of Mandamus.)

### D.  Colony Ridge Proposes a Development Agreement with Plum Grove

47.     From October 2015 through January 2016, counsel for Colony Ridge and counsel for Plum Grove discussed terms related to a development agreement between Colony Ridge and Plum Grove that would address the City's concerns as to the Subdivisions.  However, despite lengthy discussions, negotiations, and correspondence, the City never followed through on its purported efforts to negotiate and agree to a development agreement.  (Attached as **Exhibit J** are copies of correspondence related to the proposed development agreement.)

48.     Additionally, the City never signed Colony Ridge's Plats until after suit was filed. (*See* Ex. H.)  Once the City signed Colony Ridge's Plats, Colony Ridge was able to submit the Plats to Montgomery County for review.  Montgomery County requested that Colony Ridge make a number of revisions to the Plats to conform to Montgomery County Subdivision Rules and Regulations and resubmit them for review.  On April 25, 2016, Colony Ridge resubmitted the revised Plats to Plum Grove for their signature (Montgomery County requires Plum Grove's Mayor and Secretary signature on the revised Plats).  Plum Grove's signature is a ministerial act because Colony Ridge's rights as to these Plats were vested upon the original filing date.  *See City of San Antonio v. Greater San Antonio Builders Ass'n*, 419 S.W.3d 597, 603 (Tex. App.— San Antonio 2013, pet. denied) ("Under chapter 245, the filing of the first permit, or plan for

development, or plat application, in a development project determines the regulations that will be used to govern the remainder of the project.").[2]

49.     The Texas Supreme Court has explained the policy behind land developer's vested rights, stating: "Generally, the right to develop property is subject to intervening regulations or regulatory changes. In adopting sections 481.141–.143 [predecessor to Chapter 245] of the Texas Government Code on September 1, 1987, the Texas Legislature significantly altered this rule by requiring that *each permit in a series required for a development project be subject to only the regulations in effect at the time of the application for the project's first permit,* and not any intervening regulations. The stated purpose of the statute was to establish requirements relating to the processing and issuance of permits and approvals by governmental regulatory agencies in order to alleviate bureaucratic obstacles to economic development." *Hartsell v. Town of Talty*, 130 S.W.3d 325, 328 (Tex. App.—Dallas 2004, pet. denied) (internal citations omitted).

50.     Based on information and belief, the City purposefully delayed the development agreement negotiations in an effort to pass ordinances designed to discriminate against Colony Ridge's residents and to delay Colony Ridge from taking legal action against the City.

51.     Based on information and belief, the City purposefully and unlawfully delayed signing Colony Ridge's Plats in an effort to hinder the development and drive up costs related to the development.  The Texas Legislature and the Texas courts have stated that these types of

---

[2] *City of San Antonio v. Greater San Antonio Builders Ass'n*, 419 S.W.3d at 602 ("In enacting chapter 245, the legislature found the statute's requirements were necessary to prevent "administrative and legislative practices that often result[ed] in unnecessary governmental regulatory uncertainty that inhibit[ed] the economic development of the state[,] increased the costs of housing and other forms of land development[,] and often resulted in the repeal of previously approved permits causing decreased property and related values, bankruptcies, and failed projects." (internal citations omitted).

delay tactics are the type of obstacles that inhibit economic development, increase the costs of housing, decrease property values, and cause failed projects.

**E. Plum Grove's Defamation, Disparate and Unequal Treatment of Colony Ridge, its Subdivisions, and the Subdivision's Hispanic Residents**

52.     In 2000, prior to Colony Ridge's development of the Subdivisions, Plum Grove's total population was 930 residents, reportedly over 90% white and approximately 8% Hispanic or Latino.  (Attached as **Exhibit K** is a copy of the U.S. Census Bureau, Census 2000.)  In 2010, Plum Grove's total population was 600 residents, reportedly over 90% white and approximately 12% Hispanic or Latino.  (Attached as **Exhibit L** is a copy of the U.S. Census Bureau, Census 2010.)

53.     According to residents, and based on information and belief, Defendants have photographed residents on their property after being asked to cease and desist.  Defendants are publishing inaccurate commentary about Colony Ridge, the Subdivisions, and the Subdivision's Hispanic/Latino residents.  Defendants have also passed numerous ordinances in the last year designed to drive out the Subdivision's residents based on their race, color, religion, familial status and/or national origin.

54.     Notwithstanding Defendants' untrue statements, Colony Ridge's Subdivisions have been developed in accordance with all applicable laws and regulations.  Colony Ridge takes pride in developing its neighborhoods and Colony Ridge has spent significant time and money in legally developing its Subdivisions.  Colony Ridge's reputation is an essential asset to its business and Colony Ridge has always been willing to address any public concerns regarding its developments.

55.     The Subdivisions were all developed with proper utilities, including water, sewer, electrical, phone, and U.S. postal mailing addresses.  The Subdivisions all have Property Owners

Associations and recorded covenants, restrictions and/or bylaws.  The Subdivisions are designed to be residential communities.  Due to limited financial resources, owners may slowly build their residential structures for use as single family dwellings.  The majority of the residents are Hispanic or Latino families.  These families are buying land and building homes to raise their children.  Colony Ridge's customers work hard for their money and they are working hard to build their homes and to establish a strong community.

56.     The Mayor has publicly complained about Colony Ridge violating state, county and/or local laws.  The Mayor has publicly complained that the Subdivisions are illegal "Colonias" as that term has been used by the Texas Legislature.  The Mayor has publicly complained that the Subdivisions' residents are illegal aliens causing excessive noise and setting up illegal businesses.

57.     Upon information and belief, the Mayor's false statements of facts have been made to the Liberty County Commissioners Court in an effort to cause Liberty County to change its subdivision rules and regulations.  Upon information and belief, the Mayor has stated that the minimum lot size on developments needs to be increased to 1 acre to drive up the price of land and to keep out undesirables, such as the Hispanics and Latinos buying lots in the Subdivisions.

58.     On July 29, 2015, the Liberty County Commissioners held a workshop in response to complaints from Plum Grove residents as to Colony Ridge's Subdivisions. (Attached as **Exhibit M** is a news article published Aug. 2, 2015, "Plum Grove residents and developers voice their views to county commissioners.")  The article acknowledges that most of the Subdivision's residents are Hispanic, "a fact mentioned a number of times by Plum Grove residents during and after their appearances before the Commissioners Court in the past months . . ." (*Id.*)  The County Judge was quoted as stating, "The way of life that folks in that area were

used to for the last 150 years have come to an end . . . and it happened quite rapidly. Change is tough especially on folks not used to change." (*Id.*)

59. On August 25, 2015, at a Liberty County Commissioners Court, Walker complained about commercial businesses in the Subdivisions and falsely claimed that Colony Ridge was violating Texas laws by allowing commercial business in its Subdivisions. (Attached as **Exhibit N** is news article published Aug. 26, 2015, "Commissioner Conversations Aug. 25.")

60. The term "Colonias" has received press in Texas since border communities were started over 65 years ago.[3]  Affordable housing for working class families and minority families will always be a topic of concern amongst legislatures.  Unfortunately, the Defendants have decided to attack Colony Ridge, its Subdivisions, and the Subdivisions Residents rather than work with them to address any legitimate community concerns.

61. The Mayor has published defamatory statements against Colony Ridge, its owners, the Subdivisions, and the Subdivisions' residents on Facebook, including but not limited to the following:

  i   The Mayor posted a photograph of Colony Ridge's owners, including Trey Harris, John Harris, and Daniel Harris, and stated: "The Harris men. Are they proud of their developments?? Plum Grove should know their enemies."

  i   The Mayor has stated:

> "I think we should all get in trucks, crank up 97.1 at 3am and thru thwir [sic] area for about 2 hours. What's the law gonna do? As far as fear goes. I'm not anymore afraid of those people than the women and children at the Alamo were when the doors opened on the basement and the Mexican killed then [sic] all. I promise our town this . . . in six months we will have the toughest and highest paid police force in Texas. Until then, let them know whose town it is! I am not afraid to ride into their community at night and tell them to turn it down or we'll turn it up! Dont [sic] be afraid to be a

---

[3] "Las Colonias in the 21st Century," a publication by the Federal Reserve Bank of Dallas examining border Colonias in Texas, located at:
https://www.dallasfed.org/assets/documents/cd/pubs/lascolonias.pdf

Regulator!! #MountUp"

i   Generally, the Mayor's public commentary has been intended to incite others in the community.  The Mayor's comments to third parties on Facebook claims an "us versus them" mentality, labeling the new residents in Plum Grove as "them" and labeling Colony Ridge as the "enemy."

i   The Mayor posted a Facebook invitation to the community that stated that the "mayor of Plum Grove" invites the public to "Tour de Colonias" to witness what "John Harris' development has brought to this once quiet little hamlet."  The postings and public commentary continue, stating as follows:

> "The Tour de Colonias" event was a success today with people coming from Liberty, Montgomery, San Jacinto and Harris counties to see what is happening in Plum Grove. Mayor Lee Ann Penton-Walker educated everyone on the back story of how all these developments came to be, the corrupt politicians involved and some information on the money trail that started it all."

i   The Mayor has published to the general public, the following various Facebook postings:

> "[Bob Foote] capitulated with the developer to ruin our city and now old boy wants to run before his values fall any further! Yall like how I'm teaching those rats new vocabulary words. They couldn't spell capitulate before I said it. Hell the county guys had to Google it to see what it meant!!! The facts are hard on the shady!"

> "Your husband [Larry McMillian] was a part of the Council that single handedly ruined our city. I've done all I can to fight and fix what they were either to [sic] stupid or to [sic] corrupt prevent!"

> "He is preying on the American Dream. He can feel the heat now Stephen! BTW, Trey [Harris] and Heath told me why they prefer Latino customers. They said black and white people don't respect the land and don't pay their bills on time. I'm pretty sure that is a very racist statement! I swear on everything Holy they said it and I have a witness!"

> "The first person who threw the word racist out was Trey Harris, John Harris and Colony Ridge when being questioned about the quality of their product by an international news source. They are the racist. I don't see any Asians or Blacks in their advertising. How many live in your communities? If the answer is none or less than 3%.....The Harris family, Colony Ridge and Terrenos are the racist As far as voting for Trump. That's our American rights. It's

called Freedom of Speech. Welcome to Plum Grove. We're known for voicing our opinions, being great neighbors and doing the right thing. I would love to know anything that has been done to your community to harass you by the people of Plum Grove? Taking pictures to document county and city code not being followed is our duty. Not only to the private water well owners, but our federal waterways as well. God Bless. We would love to have any of the Plum Grove land owners at our meetings."

(Attached as **Exhibit O** is a copy of the publications and postings referenced above.)

62.     The Mayor's statements to members of the community are untrue and intended to harm Colony Ridge's reputation and business, the Subdivisions' reputations, and the Subdivisions' residents' reputations.  Despite their falsity, the Mayor's statements that Colony Ridge has violated laws and failed to provide proper water, sewer, and electrical to its Subdivisions have directly impacted Colony Ridge's reputation and have reduced Colony Ridge's sales.  The Mayor's untrue statements have delayed Colony Ridge's developments and this delay has cost Colony Ridge money that can be calculated out based on monthly sales of lots and interest payments accrued on sales of lots.

63.     The Defendants' claims that Colony Ridge is not properly developing land, not properly complying with development laws, not properly building roads, not properly installing utilities, selling and promoting ghettos and slums, and perpetuating an "underground railroad" for illegal aliens are meant to cause harm and have caused harm to the Plaintiffs.

64.     Colony Ridge has incurred additional operating costs and legal costs in defending itself against the Mayor's conduct and untrue statements.  Colony Ridge has spent money trying to protect its reputation and business due to the Defendants' unconstitutional conduct.

## IV.     Causes of Action

**A.     Count 1 – Violation of Right to Procedural Due Process under the Fourteenth Amendment of the United States Constitution.**

65.     Plaintiffs incorporate by reference each and every fact and allegation in the preceding paragraphs as if fully set forth herein.

66.     At all times relevant hereto, the City of Plum Grove was a Texas municipality operating through its city council, and Defendant Mayor Penton-Walker was a Plum Grove City Council Member or the Mayor thereof.    Therefore, Defendants were state actors, and their conduct was done under color of law.  42 U.S.C. § 1983.

67.     A municipality may adopt rules governing plats and subdivisions of land within the municipality's jurisdiction, and rely upon such adopted rules as a basis for reviewing plats. TEX. LOC. GOV'T CODE §212.002, 212.010(4).   The City's adoption of rules and ordinances should provide for procedural due process protections and place the land developer on notice of such rules and procedures.

68.     "As a general rule a municipal corporation's powers cease at municipal boundaries and cannot, without plain manifestation of legislative intention, be exercised beyond its limits."  *Ex parte Ernest*, 136 S.W.2d at 597.  Plum Grove's city council's decision to deny Colony Ridge's Plats based upon county regulations is contrary to law because county authority to regulate "land use, structures, and businesses" only applies to areas outside the corporate limits of municipalities.  TEX. LOC. GOV'T CODE §233.031.

69.     Plum Grove's city council's denial of the Plats was arbitration and constitutes a violation of Colony Ridge's procedural due process rights.  Based on the statues applicable to the review of Colony Ridge's Plats, Plum Grove's city council was obligated to approve Colony Ridge's Plats on or before October 4, 2015 since the City did not have any land use restrictions

in place at the time.  The City knew that it had no rules applicable to plat review, thus, the review process was merely a ministerial duty.  By default, the Plats would be deemed approved if the City took no action by October 4, 2015.  TEX. LOC. GOV'T CODE §212.009(b).  The City knew that it had no legal right to apply its recently adopted subdivision ordinance to the Plats. Further, the City knew that it had no legal right to apply another jurisdiction's regulations as a basis for denying the Plats.  Despite this knowledge, the City, through its city council, arbitrarily denied the Plats asserting that Colony Ridge's Plats failed to comply with another jurisdiction's rules. Thereafter, the City failed to respond to requests by Colony Ridge to reconsider its denial.

70.     The requirements of procedural due process apply to the deprivation of interests encompassed by the Fourteenth Amendment's protection of property.  *Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972).  Thus, Colony Ridge had a legitimate property interest protected by the Fourteenth Amendment in its real property.  Defendants have deprived Colony Ridge of this interest by denying Colony Ridge's plat applications arbitrarily and capriciously without due process of law.  First, Plum Grove's city council denied Colony Ridge's Plats based upon the laws of other jurisdictions and not its own duly adopted and enacted subdivision laws.  Second, Plum Grove wholly failed to consider Liberty County's and Montgomery County's administrative and procedural regulations applicable to plat review when they arbitrarily denied Colony Ridge's Plats based on Liberty County's and Montgomery County's subdivision regulations.  *See* TEX. LOC. GOV'T CODE §232.0025(a) and (b) (addressing county regulation of subdivisions and the timely approval of plats, providing in part, that a county must review a plat application to determine if the application contains all required documentation and notify the applicant of any missing documentation within 10 business days.  TEX. LOC. GOV'T CODE §233.031(a) and (b).

71.     Defendants have deprived Colony Ridge of its interest in its real property without providing adequate procedural due process protections as required by the Fourteenth Amendment of the United States Constitution. Defendants' actions have no foundation in reason, advance no legitimate government interest, and arbitrarily and capriciously deny Colony Ridge's procedural due process rights.  Colony Ridge has been deprived of its right to procedural due process and seeks to recover damages against Defendant for such deprivation of rights.

## II.     Count 2 – Violation of Right to Substantive Due Process under the Fourteenth Amendment of the United States Constitution.

72.     Plaintiffs incorporate by reference each and every fact and allegation in the preceding paragraphs as if fully set forth herein.

73.     The delay and denial of Colony Ridge's Plat Applications are unconstitutional in that they violate Colony Ridge's substantive due process rights under the United States Constitution. At the time Colony Ridge's Plats were submitted, the City did not have rules applicable to plat review, thus, its review process was merely a ministerial duty.  Defendants violated Colony Ridge's property interests by arbitrarily and capriciously failing to review, and/or arbitrarily and capriciously delaying review, and/or arbitrarily and capriciously reviewing Colony Ridge's plat applications against inapplicable Liberty County land use ordinances. Further, by arbitrarily and capriciously delaying, denying, and/or reviewing Colony Ridge's Plat applications Defendants have deprived Colony Ridge of its substantive due process rights.

74.     Colony Ridge has been deprived of its right to enjoy, use, and develop property, contrary to the United States Constitution and 42 U.S.C. § 1983.  Defendants' actions have no foundation in reason, advance no legitimate government interest, and arbitrarily and capriciously deny Colony Ridge's rights.  Colony Ridge has been deprived of its right to substantive due process and seeks to recover damages against Defendant for such deprivation of rights.

III.    **Count 3 – Violation of Equal Protection under the Fourteenth Amendment of the United States Constitution.**

75.    Plaintiffs incorporate by reference each and every fact and allegation in the preceding paragraphs as if fully set forth herein.

76.    Defendants' actions, as described above, have denied Colony Ridge equal protection under the Fourteenth Amendment of the United States Constitution.   Defendants have intentionally treated Plaintiffs differently than others similarly situated by improperly delaying or denying plat approval.   Specifically, Plum Grove's city council arbitrarily applied Liberty County land use ordinances to Colony Ridge's plat applications and denied them on the basis that they did not comply with those county standards.   Colony Ridge's subdivisions are not subject to county jurisdiction; rather, they are subject to the City's land use regulations as they existed at the time of application.

77.    The denial of Colony Ridge's plat applications based on another jurisdiction's regulations lacks any rational basis and represents disparate treatment of Colony Ridge.   The City's actions, advance no legitimate governmental interest, and arbitrarily and capriciously deny the City's rights.   Colony Ridge has been deprived of its right to equal protection and seeks to recover damages against Defendant for such deprivation of rights.

IV.    **Count 4 – Violation of the Fair Housing Act**

78.    Plaintiffs incorporate by reference each and every fact and allegation in the preceding paragraphs as if fully set forth herein.

79.    The Fair Housing Act bars housing practices that discriminate on the basis of, inter alia, familial status, race, or ethnicity.   42 U.S.C. § 3604(b).   Under the Fair Housing Act, any person harmed by discrimination, whether or not the target of the discrimination, can sue to recover his or her injuries.   Included in the definition of "persons" under the Fair Housing Act

are "individuals, corporations, partnerships, associations." *Id*. at § 3602(d).  Thus, "persons" under the Fair Housing Act include developers such as Colony Ridge of housing for persons protected under the Fair Housing Act, as well as property owners associations such as Grand San Jacinto, Liberty Montebello, and Camino Real Subdivision.

80.     Colony Ridge develops subdivisions for lower-income families, many of whom are Spanish-speaking or of Hispanic origin.  These individuals are members of a protected class under the Fair Housing Act.  *Id*. at § 3604(b).

81.     Plum Grove's city council has passed ordinances and regulations that are intended to drive out Colony Ridge's residents based on their race, color, religion, familial status and/or national origin.  The City has engaged in discriminatory housing practices that are barred under the Fair Housing Act by intentionally delaying and denying Colony Ridge's plat applications based on the race, color, and/or national origin of the residents of the proposed subdivision.  On information and belief, other similarly situated plat applicants have not been similarly denied and/or delayed.

82.     The City's actions are the result of intentional disparate treatment of Colony Ridge's residents and Colony Ridge itself based upon the residents' race, national origin, and familial status.  The City's conduct and ordinances have the effect of excluding a protected class from the City.  The City's conduct is intended and/or will cause a discriminatory effect and constitutes discriminatory housing practices under the Fair Housing Act.  *Id*. § 3602(f).  As such, Defendants' conduct violates Plaintiffs rights under the Fair Housing Act and Plaintiffs seek to recover damages against Defendants for such violations.

## V.       Damages

83.     Plaintiffs are entitled to actual damages, and Defendants are liable to Plaintiffs for actual damages.  Plaintiff requests that the Court find Defendants liable for all actual damages caused by their acts and award such to Plaintiff.

## VI.      Attorneys' Fees and Costs

84.     Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to costs and reasonable and necessary attorneys' fees incurred in prosecuting this suit.  42 U.S.C. § 1988.

## VII.     Pleading in the Alternative

85.      Each pleading of legal liability, cause of action, and relief sought is in the alternative so that Plaintiffs may receive a full measure of relief based on the facts pled and reasonably inferable from same.

## VIII.    Prayer for Relief

WHEREFORE, Plaintiffs Colony Ridge Development, LLC, Grand San Jacinto Property Owners Association, Inc., Liberty Montebello Property Owners Association, Inc., and Camino Real Subdivision Property Owners Association, Inc. pray for judgment pursuant to 42 U.S.C. §1983 and 42 U.S.C. §3601 *et seq.* against Defendants, the City of Plum Grove and Mayor Lee Ann Penton-Walker, as follows:

A.     Actual Damages;

B.     Prejudgment and Post-judgment Interest;

C.     Court Costs;

D.     Attorneys' Fees; and

E.     Such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,


By: _/s/ Robert N. Hancock, Jr._____
     Robert N. Hancock, Jr.
     Texas Bar No. 24036719
     Tiffany A. Harrod
     Texas Bar No. 24059939
     C. Mauricio Escobar
     Texas Bar No. 24057839
     9 Greenway Plaza, Suite 1100
     Houston, Texas 77046
     rhancock@coatsrose.com
     tharrod@coatsrose.com
     mescobar@coatsrose.com
     Telephone: (713) 651-0111
     Facsimile: (713) 651-0220

**OF COUNSEL**
COATS ROSE, PC

     ATTORNEY IN CHARGE FOR
     COLONY RIDGE DEVELOPMENT, LLC,
     GRAND SAN JACINTO PROPERTY OWNERS
     ASSOCIATION, INC., LIBERTY MONTEBELLO
     PROPERTY OWNERS ASSOCIATION, INC.
     AND CAMINO REAL SUBDIVISION
     PROPERTY OWNERS ASSOCIATION, INC.